```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```

JEROME STALLONE,

        Petitioner,

                                  **No. 10-CV-0615(MAT)**
  -vs-                            **DECISION AND ORDER**

BRIAN FISCHER,

        Respondent.

## I. Introduction

Pro se petitioner Jerome Stallone ("Stallone" or "Petitioner") has filed a habeas corpus petition pursuant to 28 U.S.C. § 2254 seeking review of two determinations by the Auburn Correctional Facility on March 17, 2008, following Tier III Superintendent's Hearings, recommending that a portion of Stallone's "good-time credits" be withheld. Stallone is currently incarcerated at Franklin Correctional Facility.[1]

## II. Factual Background and Procedural History

### A. The Misbehavior Reports

Two "inmate misbehavior reports" were issued to Stallone at Auburn Correctional Facility on February 26, 2008, and February 27, 2008. In the first misbehavior report, Corrections Officer ("C.O.") Ball charged petitioner with possessing marijuana in violation of Prison Disciplinary Rule ("PDR") 113.25. C.O. Ball stated that

---

[1] Stallone's petition does not challenge the constitutionality of his underlying convictions for Robbery in the First and Second Degrees and Reckless Endangerment in the First Degree.

during a search of Stallone's cell, he discovered what appeared to be a marijuana cigarette concealed in the pocket of a coat hidden in a bucket behind the bed. Thirty minutes later, C.O. Ball turned the substance over to C.O. Harte, who used the "NIK" drug identification test to positively identify the substance as marijuana.

On February 27, 2008, after Stallone's urine sample tested positive for "THC/50 cannabinoids," he was issued a second misbehavior report, charging him with using a controlled substance in violation of PDR 113.24.

**B. Disciplinary Hearing Regarding the Drug Possession Charge**

On March 2, 9, 11, 13, and 17, 2008, Captain B. Chuttey ("the H.O." or "the hearing officer") presided over a Tier III disciplinary hearing regarding the drug-possession violation charged in the February 26, 2008 misbehavior report. Stallone, after being advised of his rights and responsibilities, stated that he understood them and acknowledged having received everything he needed from his legal assistant to proceed. Stallone then pled not guilty to drug possession under PDR 113.25.

The H.O. heard testimony from, inter alia, C.O. Ball, C.O. Harte, C.O. Schramm, Sergeant Ballings, Lieutenant Koziol, and Captain McCarthy. The officers testified that the search of Petitioner's cell was authorized based upon confidential information received by Captain McCarthy that Petitioner possessed

contraband. The H.O. precluded Petitioner from questioning Captain McCarthy regarding the source of the confidential information, stating that he had already "received testimony from [Captain McCarthy] on confidential information about this."

Petitioner asked the H.O. to assess the reliability of the confidential information, and provided several questions for that purpose. The H.O. responded that he had already evaluated the confidential information, and that the questions Petitioner had submitted were typical of those employed in conducting such an evaluation. The H.O. also observed that the "threshold . . . to authorize the cell frisk is reasonable belief," which is "a low threshold."

Based on the misbehavior report, the positive drug test result, and the hearing testimony, the H.O. found Petitioner guilty of possessing a controlled substance in violation of PDR 113.25. The H.O. concluded that "[i]t appear[ed] proper authorization was given to conduct the cell frisk based upon information received by staff," and that he had "heard confidential[] . . . testimony on tape," which he found credible. The H.O. imposed a penalty of 12 months of confinement in a Special Housing Unit ("SHU") and 36 months of loss of privileges. Finally, the H.O. recommended the loss of 24 months of "good time" credits.

On administrative appeal, Petitioner's SHU confinement was reduced to six months, and the loss of privileges and recommended loss of good time were both reduced to 12 months.

**C. Disciplinary Hearing Regarding the Drug Use Charge**

On March 3, 11, 13, and 17, 2008, the same H.O. presided over a separate Tier III disciplinary hearing regarding the drug-use violation charged in the February 27, 2008 misbehavior report. Testimony was received from, <u>inter alia</u>, Physician's Assistant Laux, C.O. Carbonaro, C.O. Schramm, C.O. Brown, Sergeant Ballings, Lieutenant Koziol, and Steve Grimmell.

Stallone asserted that at the time of the drug test, he had been taking Percogesic, an anti-inflammatory drug which, he claimed, resulted in "false positive" results in marijuana tests. However, Steve Grimmell, a technical specialist employed at Syva Company,[2] the manufacturer of the urine-testing equipment, testified that the "cannabinoid based drugs" were the only known substances to test positively for marijuana, and that Percogesic would not be expected to cause a false positive.

At this hearing, Petitioner elicited testimony regarding the confidential information that precipitated his cell search. When the H.O. invited Petitioner to call Captain McCarthy to testify

---

[2] <u>See</u> <u>Peranzo v. Coughlin</u>, 850 F.2d 125, 126 (2d Cir. 1988) (stating that drug-test results obtained with "Syva Company's EMIT-st urinalysis drug detection kits . . . may be relied upon as sufficient evidence to warrant prison discipline").

regarding the confidential information, but Petitioner declined based on the H.O.'s assurance that he would "do an independent evaluation of the credibility of this information received . . . ."

At the conclusion of the hearing, he H.O. found Petitioner guilty of using marijuana in violation of PDR 113.24, based upon on the misbehavior report, the positive urinalysis test results, and the hearing testimony. The H.O. noted that he had "taken testimony on the confidential information and found it to be reliable to authorize the urine test that ha[d] shown to be positive." He imposed a penalty of 12 months of confinement in SHU and 36 months of a loss of privileges, and recommended a loss of 24 months of good time credits.

Petitioner's administrative appeals were unsuccessful. Petitioner then proceeded to exhaust his claims by means of New York Civil Practice Law & Rules ("CPLR") Article 78 petitions. In Albany County Supreme Court, he challenged the administrative determination that he had violated PDR 113.25 by possessing marijuana. Petitioner claimed, among other things, that (1) his due process rights were violated because "no written or oral reason was given as to why the petitioner could not ask the hearing officer . . . to ask the alleged unidentified confidential informant general questions which concerned the credibility [and] reliability of the alleged informant"; and (2) the hearing officer was biased.

On the same day the Albany County Article 78 petition was filed, Stallone also filed an Article 78 petition in Cayuga County Supreme Court challenging the administrative determination that he had violated PDR 113.24 by using marijuana. Petitioner claimed, among other things, that (1) he was improperly denied the right to question the confidential informant; and (2) the hearing officer was biased.

Cayuga County Supreme Court transferred Petitioner's Article 78 proceeding to Albany County Supreme Court, which then consolidated the two actions. On December 10, 2008, the Albany County Supreme Court transferred the consolidated matter to the Appellate Division, Third Department because the matter raised "a question of substantial evidence."

On September 17, 2009, the Appellate Division issued a Memorandum and Judgment unanimously confirming both administrative determinations. Stallone v. Fischer, 65 A.D.3d 1410, 885 N.Y.S.2d 230 (App. Div. 3d Dept. 2009). The Appellate Division found that "[s]ubstantial evidence, in the form of the misbehavior reports, the positive test results and the hearing testimony of the authors of said reports and other correction officers, support the determinations finding petitioner guilty of drug possession and drug use." 65 A.D. 3d at 1410 (citations omitted). As for "petitioner's procedural arguments," the court found that petitioner "was not entitled to question the confidential

informants." Id. (citations omitted). The court also rejected petitioner's contention "that the Hearing Officer was required to assess the veracity of the confidential informants," "because the determinations of guilt rested upon the discovery of marihuana in his cell and his positive drug test, respectively, and not from the confidential information" Id. Moreover, the court's "review of the record reveal[ed] no evidence of hearing officer bias or that the determinations flowed from such alleged bias." Id. at 1410-11 (citations omitted). Finally, the court found "petitioner's remaining contentions . . . , to the extent preserved, . . . to be unavailing." Id. at 1411.

The New York Court of Appeals denied leave to appeal. Stallone v. Fischer, 13 N.Y.3d 712, 891 N.Y.S.2d 691 (N.Y. 2009). Petitioner's motion for reargument was denied. Stallone v. Fischer, 13 N.Y.3d 935, 895 N.Y.S.2d 311 (N.Y. 2010).

### D. The Federal Habeas Petition

Petitioner then timely filed a pro se habeas corpus petition. Respondent concedes that Petitioner has fully exhausted all of his claims by raising them on federal constitutional grounds in his Article 78 petitions and by appealing the petitions' dismissal to the Appellate Division and the New York Court of Appeals. For the reasons that follow, the petition is dismissed.

**III. Discussion**

    **A.   Denial of the Right to Call Witnesses**

It is well-settled that a prisoner charged with violating a prison regulation which could result in the loss of "good time" credit is entitled to minimal due process protections–the right to advance written notice of the claimed violation and to a written statement by the fact finders as to the evidence relied on and the reasons for the disciplinary action. Wolff v. McDonnell, 418 U.S. 539, 563-65 (1974); accord Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445 (1985).

Stallone claims that his due process rights were violated at the Tier III disciplinary hearings regarding the drug-possession and drug-use charges because he was denied the right to question the confidential informant, which he claims was a violation of Title 7, N.Y. COMP. RULES & REGS., § 254.5(a)[3] and due process.

As an initial matter, a violation of a State administrative rule such as Title 7, N.Y. COMP. RULES & REGS., § 254.5(a) does not present a cognizable Federal constitutional question. Moreover, the

---

[3] The prison regulations in New York which grant the inmate a conditional right to call witnesses, provided that the testimony is material, is not redundant, and doing so does not jeopardize institutional safety or correctional goals. 7 N.Y. CODE R. & REGS. § 254.5(a). Section 254.5(a) further provides that if such a request is denied, the Hearing Officer shall give the inmate a written statement of the reasons for the denial, including the specific threat to institutional safety or correctional goals presented.  This notice was suggested by the Supreme Court but not required as a matter of due process. Laureano v. Kuhlmann, 75 N.Y.2d 141, 147 (N.Y. 1990) (citing Wolff v. McDonnell, 418 U.S. at 566; Ponte v. Real, 471 U.S. 491). The regulation also grants the inmate the conditional right to be present when his witnesses testify, subject to the same terms. 7 N.Y. COMP. R. & REGS. § 254.5(b).

denial of the opportunity to call a confidential informant does not run afoul of Federal due process principles, as the inmate's right to call witnesses may be circumscribed for reasons pertaining to institutional and individual safety. See Wolff v. McDonnell, 418 U.S. at 562 ("Retaliation is much more than a theoretical possibility; and the basic and unavoidable task for providing personal safety for guards and inmates may be at stake, to say nothing of the impact of disciplinary confrontations and the resulting escalation of personal antagonisms on the important aims of the correctional process.").

In any event, as a matter of New York evidentiary law, inmates are not permitted to question confidential informants at prison disciplinary hearings. E.g., Shannon v. Goord, 282 A.D.2d 909, 910 (App. Div. 3d Dept. 2001) ("Inasmuch as 'an inmate does not have a constitutional right to cross-examine adverse witnesses at a disciplinary hearing', and because an 'important channel of information would obviously be impaired if prison investigators were unable to assure their informants complete confidentiality', petitioner's right to call witnesses was not violated by the denial of his request to call the informants whose identities remained confidential to protect them from retaliation[.]") (citing Matter of Laureano v. Kuhlmann, 75 N.Y.2d at 147-148; internal citation omitted).

Stallone has established neither an error of State law nor an error of Federal constitutional magnitude. Accordingly, his claim pertaining to the denial of his request to call the confidential informant is dismissed.

### B. Failure of Hearing Officer to Assess the Confidential Informant's Credibility

Stallone asserts that the hearing officer denied him his due process rights by failing to allow him to submit questions to the confidential informant so as to assess his veracity. The Appellate Division held that the hearing officer was not required to do so "because the determinations of guilt rested upon the discovery of marihuana in his cell and his positive drug test, respectively, and not from the confidential information[.]" Stallone, 65 A.D.3d at 1410 (citations omitted). It is well-settled New York law that where a hearing officer's determination of an inmate's guilt is not based upon the confidential information which prompted the request for urine sample, the hearing officer is not required to assess the credibility of the confidential informant. E.g., Mitchell v. Selsky, 252 A.D.2d 639, 640 (App. Div. 3d Dept. 1998) ("[I]t was unnecessary for the Hearing Officer to assess the reliability of the confidential informant inasmuch as the determination of petitioner's guilt was not dependent upon the confidential information but merely provided the suspicion prompting the request for petitioner's urine sample[.]") (citing Matter of Brown v.

-10-

Coombe, 241 A.D.2d 644, 660 N.Y.S.2d 87, 88; Matter of Shaffer v. Hoke, 174 A.D.2d 787, 789-790, 571 N.Y.S.2d 117); 7 N.Y. CODE R. & REGS. § 1020.4(a)(1)(iii) (setting forth procedure for urinalysis testing of inmates).

This rule is not inconsistent with due process. The Supreme Court has held that because confrontation and cross-examination "present greater hazards to institutional interests", such matters are left "to the sound discretion of the officials of state prisons." Baxter, 425 U.S. at 321 (citing Wolff, 418 U.S. at 567, 569). Confrontation and cross-examination "stand on a different footing [than, e.g., the limited right to call witnesses] because of their inherent danger and the availability of adequate bases of decision without them." Baxter, 425 U.S. at 322 (citing Wolff, 418 U.S. at 567-68). Here, as the Appellate Division found, there was an "adequate bas[i]s of decision[,]" Baxter, 425 U.S. at 322, without the confidential informant's testimony. Stallone has not demonstrated that he was denied a right guaranteed to him under due process principles.

In any event, the hearing officer stated on the record that he had posed questions similar to those suggested by Stallone and had determined that the informant was credible. Stallone has not provided no basis for concluding that the hearing officer abused his discretion.

**C.   Judicial Bias**

Stallone claims that "[t]he Hearing Officer was not fair or impartial; he repeatedly stated throughout the hearing(s) that petitioner was guilty because the sergeant said so. This was because the hearing officer trained the sergeant, and they were buddies." Pet., ¶12. The Appellate Division's "review of the record reveal[ed] no evidence of hearing officer bias or that the determinations flowed from such alleged bias." Stallone v. Fischer, 65 A.D.3d at 1410-11 (citations omitted).

To establish that a judge has engaged in misconduct sufficient to warrant redress, a party must typically demonstrate that the judge displayed "such a high degree of favoritism or antagonism as to make fair judgment impossible." Liteky v. United States, 510 U.S. 540, 555 (1994). The impartiality required of prison officials does not rise to the level of that required of judges generally, and "[i]t is well recognized that prison disciplinary hearing officers are not held to the same standard of neutrality as adjudicators in other contexts." Allen v. Cuomo, 100 F.3d 253, 259 (2d Cir. 1996). Rather, due process requires that the hearing officer be sufficiently impartial so as not to present a "hazard of arbitrary decisionmaking." Wolff, 418 U.S. at 571.

Stallone points to several remarks by the hearing officer which he claims demonstrate bias. For example, he argues that the hearing officer improperly stated, before all of the testimony had

been heard, that "inmate Stallone was found guilty of 113.24 for where he had a dirty urine sample tested positive for cannabinoids." Resp't Ex. K at 23. When this misstatement was brought to the hearing officer's attention, he corrected himself, stating, "Oh, I'm sorry . . . I didn't mean it like that," and clarified that he meant to say that Stallone was charged with having had a positive urinalysis test. Id. at 24. Stallone also asserts that the hearing officer exhibited bias by asking Sergeant Ballings if he recalled the charge of "dirty urine" in the misbehavior report. The hearing officer was not indicating his own opinion regarding Petitioner's guilt or innocence, but rather was simply reminding the sergeant of the substance of the disciplinary charge. On this record, the Appellate Division fairly concluded that there was no basis for finding predisposition or bias on the part of the hearing officer.

**D.   Imposition of Confinement in a Special Housing Unit**

Stallone appears to challenge part of the punishment meted out by the hearing officer–confinement in SHU. To obtain a federal writ of habeas corpus, a state prisoner must show that he or she is in custody in violation of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). Habeas corpus is appropriate only for challenges to the "fact or duration" of confinement. Preiser v. Rodriquez, 411 U.S. 475, 500 (1973); see also Peralta v. Vasquez, 467 F.3d 98, 102 (2d Cir. 2006).

The Fourteenth Amendment's Due Process Clause protections apply to determinations affecting duration of confinement because an inmate's liberty interest is implicated. Wolff v. McDonnell, 418 U.S. at 556-57. Thus, a disciplinary conviction that results in the loss of good-time credits is equivalent to a loss of a "shortened prison sentence." Id.. Habeas corpus is the appropriate vehicle in which to challenge a disciplinary proceeding that results in the loss of good time credits. Preiser, 411 U.S. at 500 (holding that § 2254 is the "sole remedy for a prisoner's challenge to revocation of good-time credits"). However, because these protections do not apply to mere changes in the conditions of confinement, the SHU confinement claim as not cognizable. See Wolff, 418 U.S. at 557. Stallone's claim regarding SHU, which challenges a change in the conditions of confinement rather than the duration of his confinement, is not cognizable on federal habeas review. Accord, e.g., Torres v. Superintendent of Upstate Corr. Fac., No. 01 Civ. 1337, 2007 WL 603402, at *3 (N.D.N.Y. Feb. 23, 2007); Adams v. McGinnis, 317 F. Supp. 2d 243, 244 (W.D.N.Y. 2004). Petitioner's claim with respect to his placement in SHU is dismissed.

**IV. Conclusion**

For the reasons stated above, Jerome Stallone's Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the Petition is dismissed. Because Petitioner has failed to make a substantial showing of a denial of a constitutional right, the

Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2).  The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal in forma pauperis.

**SO ORDERED.**

                                        S/Michael A. Telesca

                              _____
                                        MICHAEL A. TELESCA
                                    United States District Judge

DATED:    October 21, 2011
          Rochester, New York